This matter is D v. Brewer v. Dunmore. May it please the court, my name is Cynthia Pollack and I represent Assistant Fire Chief Bobby D. I reserve four minutes for rebuttal. Okay, now here we are in the envious position of actually having law. We don't have to use any common sense because we have cases here. Given the cases that we have, I'm looking particularly at Edwards. In Edwards we said, and we relied upon a Supreme Court case in saying it, as well as Robb and Stern. Part of what we said was that will you have, and I won't quote it exactly, but will you have a situation where there is a brief adverse impact, loss of employment, with pay, prior to an expedited hearing, that there's no due process problem. Now given Edwards, given Robb, given Stern, the fact that we have the luxury of having these cases, so what am I missing? How can you win? Your Honor, because the fact is those, I think, cases are distinguishable, number one, which I will go through and distinguish them for you. But really the main question, which I think we have to look to Stana, which the court specifically said, this court said, that you have to look whether there's a property interest. That's exactly right. There's a property interest in public employment. But we also, you're talking about due process, I guess, you're talking about not just the denial of your process, of your property interest, you're talking about the denial of your property interest without due process. It's the due process that gives you the hook for any kind of remedy. Isn't that right? Due process, yes, both for stigma plus, and then also the straight due process analysis. Would we have a case if we found a property interest or a liberty interest? Pardon? I mean, aren't there two aspects to the case? There's a property interest aspect, which really wasn't analyzed by the district court, and then there's the liberty interest. Is it your contention that if we find either, no matter what the degree of the interest or the significance of the interest, that the case should go forward? Yes, I think that there is a degree. She's warming up for March 31. She's just throwing all these softballs out there. And I'll accept them. You have to analyze whether there was a property interest. There's the straight due process claim, and then there's also the stigma plus. You always have to have, for the plus, you have to have an additional harm, an additional right, which Your Honor had stated in Hill. The straight due process, which the court did not even analyze, when you have a suspension, there is a property right because you have to go look at the contract. Dunmore promised Assistant D that he would not be suspended without just cause. There was absolutely no just cause to suspend him here, and he was defamed publicly. I understand where you're going, but I'm trying to keep this out of a breach of contract context. When you say that he had a right to just cause before he was terminated, he really wasn't terminated, he was suspended, without just cause, then that might be a breach of contract. But how do you elevate that to a property interest or a liberty interest under the First Amendment? Because this court has said that, and even in the Solomon case, which I cite, and then it talks about the Ganoit case, and they talk about suspensions are just as important as terminations if it's in a contract and it says without just cause. It was suspensions with pay. Suspensions with pay followed by an expedited, I won't say immediate, it was expedited. It's been a pretty expeditious hearing. That doesn't take away the fact that you publicly humiliated this person because of the fact that you didn't... That's not the property interest part. You're moving away now to the other interest. We're talking about the property interest and the employment now. And there's absolutely a property interest in this. It arises out of the state law. Well, let's assume there is a property interest. If there is a property interest, he doesn't automatically win, right? Just give us a chance to a jury trial. No, no, no, just a minute. The question is whether or not the city was wrong in not giving him a pre-suspension hearing. There's no automatic answer to that, is there? Well, yes, there is because he had a contract that said... But there are cases that uphold, you know, a suspension without a pre-declaration hearing. Loudermill. The U.S. Supreme Court said Loudermill. And the Loudermill actually was without pay, but they stressed... I know, and he had pay, so he's entitled to even less process than Loudermill was. He's allowed to. He has...Dunmore made a promise to him that we will not suspend you. I think you're missing the point of my question. The point of my question is, you know, even assuming he's entitled to some process, what process is that? It's not automatically that he's entitled to a pre-deprivation hearing. In some cases, a post-deprivation hearing is sufficient. And I agree with you when it's an emergency or it's impractical just to sit and give notice, opportunity to present the evidence against this gentleman, and give him an opportunity to respond. That's all. Very informal. It doesn't have to be loud. Is that what Loudermill says? Yes. That's all? Show me where it says that. It says, you know, I don't have a specific, but it says, all the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute in that case. And the court specifically said in Loudermill that these gentlemen never had an opportunity to confront the charges against them. I'm reading from the opinion in Loudermill at page 1495 of the Supreme Court report, 405. A governmental employer, now this is not the fact of Loudermill, because there you do not have suspension with pay, so it is dicta, but it's pretty compulsive dicta. A governmental employer also has an interest in keeping citizens usefully employed, rather than taking the possibly erroneous and counterproductive step of forcing its employees under the welfare rules. Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay, and the problem it's talking about is the process problem. And it's the balancing under the Matthews case, talking about what's the government interest, what's the individual employee's interest. In this case, the employee's interest far outweighs any elusive interest of the government. Well, we'll walk through that now, because you're using hyperbole. Let's try to break that down. When he says balancing the interest, I would assume from the point of view of a governmental entity, the interest is not having a fireman who is believed not to have the proper EMT certification and fire academy training. The employee's interest is maintaining the salary and not being held up to ridicule in the public as well as with your peers. You don't want to be embarrassed with this person who's been in the fire department, I guess, 18 or 20 years. It's a small community. I grew up in a small community. I know what the dynamics of small communities are like. So he's kind of worried also about what his neighbors think. Now, if you balance the city's concern or the township's concern about someone dying because one of their firemen doesn't have proper EMT training against the employee's concern about losing salary and not being defamed, isn't the balance to that you suspend the person with full salary, give them an expedited hearing, and you don't make a big press release, you don't use this topic to run for reelection, you simply do it quietly, a Senate memo saying we don't think fireman X has the proper training, we're going to suspend him without pay, schedule a hearing right away. His interest in his salary is maintained because he's not losing any money. The city's interest is maintained or the township's interest is maintained because from their perspective they don't have a fireman out there who can't save lives the way they're supposed to. Why isn't that a cheaper proper balance? That's not applicable here because Dunmore admitted that the only reason why it didn't meet and discuss with Dee about what happened was because of the fact that they were worried about getting bad publicity. Well, you said that in your brief and there's a site and I didn't check the site in the appendix. Your colleague cites to a parasitized swim point deposition where someone says that they're concerned about the safety of the citizens. And I deposed to the 30B6 deponents and it was not, it was because they were worried about getting blasted in the paper. And that has, there is absolutely no interest I think that the borough had in this case. Dee has tremendous amount of interest because of the fact that he is suspended, can't go into work, and to me the only way I can really relate things and understand them is to put them in the context of you or me. You have your robe which you've honored for 14 years and if someone ever, well the government, your employer, tells you, you know, you have to go to judicial CLEs say. You know, I don't know if you have to do that or not, but judicial CLEs. Well, I guess I've researched judicial CLEs, thank goodness, but I understand what you're saying. But I'm just trying to do some sort of analogy to help understand the deprivation that occurred here. So your employer tells you, you know, without even talking to you, without even asking you the simple question, hey, did you go to training? We don't have the records here for you. Why wouldn't they at least ask you that before they harm you? They strip you of your robe and your gavel, which you've honored. Well, your point I think is not so much that he necessarily has the property interest, but there is at least enough evidence to create an issue as to whether the real reason was because there was a hazard to safety or they realized he was an 18-year veteran and he could do it just as well as anyone else, but they were afraid of being blasted. Well, the other thing is the district court here didn't analyze the property interest aspect at all, did they? He did not. No, just the liberty interest. Now, let's get to the liberty interest. We need stigma, which you're arguing there is from the newspaper report plus, but we don't have any plus that restrains his freedom or it's not like he was terminated without cause or something that would restrict his further opportunities. It seems that our case law talks about some kind of liberty restriction as being the plus. What's your view of what the plus has to be? I'll have you answer and then you can respond in rebuttal as well. Just respond to my question. Okay. The plus factor in this case is the fact that he had a contract. I know you don't want to talk about that contract, but he had a contract, and then also he has a Rubberman notice in his file that will forever go wherever he goes. When they do a reference check, was he ever suspended? Yes, he was suspended. That follows you. But that's a stigma. No, I think there was a property interest. That's why I say you always have to look at that property interest. What happens to the Rubberman notice now? They made a mistake. He's back working. What happens to that Rubberman sitting in the file? It's still in the file, and then the public does not know that this man had high integrity. Well, there was another article on July 7th. The day after this, another article came out. I don't know to the extent of the prominence that it was given in the newspaper, but that wouldn't be a claim against the township. That's a problem in the newspaper. But there was an article or a story that ran the day after basically saying that he was improper. I don't know what it said, but I'm assuming it said that he was improperly terminated and that he does have the qualifications he needs to have to be in the forest, didn't it? Well, it stated that he was reinstated, but certainly the borough did not accept ownership and publicly tell the people, you know, we were wrong. We should never have done this to this man. And, you know, his colleagues have questioned, you know, about him in a sense of the example I was going to with you not taking CLEs and your colleagues. You're stripped. You can't come to work that you've done for the last 14 years. Your whole family is, you know, humiliated in some respects. We actually wonder how he accomplished to do it. We try to do it too, but I think we understand. Okay, thank you. Good morning, Your Honors. Caroline Mahalchik on behalf of the Borough of Dunmore and its council and councilmen in this appeal. I would like to address first the issue of whether the property interest and the liberty interest are separate and apart, because that's, as you correctly pointed out, the district court did not, the district court did not specifically address the due process violation, the straight due process violation. The district court did find that there was no interest that was in addition to any damage to reputation such that the stigma plus claim could survive. So don't we at least have to, shouldn't we at least send that back if we don't decide ourselves to have a determination whether there's a property interest here? I don't think so, Your Honor, because I believe that they are, it's the same analysis, and I think that the, what the district court did was find that there was no liberty interest, there was no interest, property interest, that rose to the level of allowing the stigma plus claim to go forward. And without that, and that interest would be the same interest as necessary for a procedural due process. Really, yeah, I mean the cases, I have my liberty interest cases here and I have my property interest cases here. They're very different. And there's a lot of authority here. I mean, I must say that in terms of the briefing, each side relied upon non-presidential opinions of our court, and there are numerous presidential opinions of our court talking about what you need for both property and liberty. I say that as an aside, but... You don't concede that he had a property interest in his job? No, I do not, Your Honor. On what basis? Well, let me restate that, if I may. He does have a property interest in his job. He does not have a property interest in not being suspended for eight days with pay, with a scheduled post-separation hearing. Isn't there a specific statute in Pennsylvania about suspending firefighters? The collective bargaining agreement... Well, isn't there a specific statute? I don't know about that statute, Your Honor, at least to the extent that I'm comfortable arguing that. If there were a statute that said a firefighter can only be suspended for A, B, and C and he's suspended for D, you agree that his property interest has been taken away? Yes, if that were what the statute said, Your Honor, I would agree with that. How does the contract that says he can only be fired or suspended for just cause, how is that different from the statute? Yeah, right. You're getting back to the CBA. That's what the contract says. It does not define what just cause is. Well, it can't. But it is a pretty well-established, I'll call it, you know, a common law of the shop. Everybody knows that in collective bargaining, in union matters, what just cause is. I mean, there has to be some cause, right, based on something. And in this case, there was cause for that suspension. It was just a baseless suspicion. It was a mistake. It was just a mistake. Well, it was a mistake made after thorough research by the borough. The borough collected... By thorough research. By thorough research. I mean, thorough research of the credentials... You can say, well, I don't have any papers that show he took this... The newspaper article on the 30th said, has one of the councilmen saying, this requires more research. He was grandfathered in. This shouldn't be happening. I mean, the very article that reports on it says, we need more research. He was grandfathered. That decision, and this is in the record, the decision was made by council after receiving, requesting information from the fire chief. And the majority of council said, you know, we cannot afford to have an uncredentialed firefighter working. You're pulling from the record. It's a little bit selective in terms of what it says. There was also at least two statements made that we didn't want to be blasted in the paper. But isn't the point, though, that this was thrown out based upon the lack of a liberty interest, because no stigma plus, without a sufficient examination of the property interest claim and determination by the court whether there is a property interest? Yes, Your Honor. The district court's opinion deals with the stigma plus interest alone and does not analyze the straight procedural due process claim. Let me ask a follow-up question then. And I think Judge Rundell asked this question of your opponent then. Should we then go ahead and decide the property due process question or should we send it back to the district court to make that decision and say, hey, you didn't decide this issue? I think that this court is in a position to decide that issue based on its other case law on property interest. And Your Honor pointed out that both opposing counsel and I relied on two unreported cases, those being the Jerry Tong cases and the Solomon case. Those cases, and my opponent relies on the Solomon case, those cases address the pre-termination process that's necessary here. And I think that this court is in the best position to address that issue without sending it back to the district court because I think that it's intertwined with the issue of the liberty interest. All right. Well, how about our authority, Wilson, the Wilson case, where we held that the contract with a just cause provision creates a constitutionally protected property interest in employment. And the case of Stana, a 1985 case, post-deprivation hearing is insufficient unless pre-deprivation hearing would have been impossible or impracticable. I mean, how can you win before us and how do we write the opinion to say there's no property interest that we can decide on our own without sending it back? I think that the opinion gets written by finding that it's not a question of whether there's a property interest. There's not a question of whether there's a property interest in his employment in the collective bargaining agreement. The question is whether pre-deprivation due process was afforded to Mr. D. And here it was, the standard that is set out in the process. What due process did he receive pre-deprivation? What he received was a... Suspension. Prior to the suspension he received the letter that was handed to him by, and this is undisputed, it was given to him by his fire chief who was involved in the collection of the credential and the information. And the fire chief is an official of the borough of Delmore. And what did the letter say? The letter said that you are going to be suspended and there's an immediate... That's due process? It gave him, it was noted that he was going to be suspended and there was already a post-deprivation hearing scheduled, Your Honor. And you said he got due process before the suspension. This is sounding more and more like a Bolshevikian kind of due process. Here's the letter, you're suspended. He had at that point in time the opportunity to tell to the chief, say to the chief, this is not right. He's already suspended. The point here is what is the exigency? It was prevented someone just picking up the phone and saying, geez, Bob, this has come out. It looks like you may not be eligible to be in the force. What's the deal here? Rather than just hitting him with a letter saying he's suspended. Let's have a meeting or a hearing or something. Ask him. Give him an opportunity. They asked his immediate supervisor, they asked the fire chief for that information repeatedly. And that's in the record. There are memos to the fire chief. My warped idea of due process is that before someone does something bad to me, I get a chance to tell them my side. Not the supervisor, not some friend, not some relative, but I get a chance for an opportunity to be heard. The opportunity to be heard is my opportunity to be heard before I'm suspended. That's kind of my very warped view of what due process means. I don't think that's warped, and I understand that position. But there is an issue here that the borough had caused to move ahead with the suspension right away. And that's the test that is under the Matthews case and is cited and outlined in detail in the Solomon case, which is the unreported opinion. But that is an issue. That is an issue that needs to be resolved as to whether it was necessary for them to move forward with limited process, i.e. none, for six or eight days. But that's an issue of fact that needs to be determined as part of the calculus of was there a property interest here that, given Matthews, is actionable. So doesn't that need, well, I won't ask you whether it needs to go back for that determination. I will. Doesn't it need to go back for that determination? If not, why not? I don't think it does because I think that the record establishes that the borough had cause to act in this manner. That record also says that the borough did it because they thought they were going to get blasted in the papers. So there's a dispute in the record. What was the cause you claim the borough had for, as you say, acting in this manner, namely suspension without a hearing? The borough was very concerned that they were going to be held liable and, if the town found out, be subject to more liability. What do you mean by held liable? I'm sorry, Your Honor. What do you mean by held liable? You mean somebody filed a lawsuit and say, you know, you're liable because you have an assistant chief who didn't take CPR? What do you mean by held liable? Should there be a fire that resulted in injury or death that wasn't responded to in a manner sufficient to... It's a worst-case scenario argument, but you have a small town, you have a small borough here who it comes to their attention that two of their firefighters are without credentials. This is coming from their fire chief, that these two firefighters are without credentials. And they said, wait a minute, we need to act on this immediately. We do not want it... Why? Why do they need to act on it immediately? Because they had firemen who were potentially uncredentialed, that potentially were not qualified to be firefighters. He's been on the force for 18 years with no one saying he's been doing a bad job or is not equipped to do it. He was involved with an assistant chief. That is true, but this came in, this investigation into the credentials happened when the political makeup of council changed and a new borough manager came into play. Well, that's exactly the point. The political makeup changed as your colleague is saying they didn't want to get blasted in the press. And here's a chance to make some hay at the expense of Mr. D. We're going to have a little... You can score some political points with this. We're going to talk about how we're going to keep the citizens safe. We're going to get D. off the force because we're concerned, as she said, we're being blasted in the press. Well, their concern was that they were going to be blasted in the... It does say that they were concerned about being blasted in the press. I can see that. The record speaks for itself. What is the justification to take somebody off their job without cause and without any kind of pre-termination hearing? This was the first time they became aware of this. This was the first time. The councilman who was deposed... I understand that you're saying that they were concerned. You can see that they were concerned they were going to get blasted in the press. And Ms. Pollack earlier was talking to us about a balancing test. What justification does that give someone to terminate a public employee, the fact that you're going to get blasted in the press? It wasn't just being blasted in the press. It was being blasted in the press because of the potential ramifications of having an uncertified, unqualified firefighter on the force. For 18 years doing a fine job. Well, yes, fortunately for the Borough of Dunmore, there were no issues with him prior to this point. But just to follow up on opposing counsel's analogy, if I'm a CLE and the CLE board doesn't find out about it for 18 years, that doesn't mean that getting away with something isn't cause for me not to be investigated. Well, it's probably kiss and latches and you're probably going to be okay. Is there something in the record that gives the reasons the council gave for the suspension without a hearing? Well, the... Like minutes of the council meeting or something like that? There are not minutes of the session in which the council made the decision. It was an executive session. Is there anything in the record that says, you know, the reasons the council stated for taking this action? The suspension letter states why they took this action. And then the deposition states, the deposition of the council members state why they took the action they did. And that includes the quote-unquote mother hen effect, the wanting to protect the town, didn't know if the boys were qualified or not. Counselors relying on the information they received from the fire department in making this decision. So what there is are the depositions and the letter of suspension, right? Is that what you depend on for showing the reasons the council gave as being sufficient for suspension without a pre-deprivation hearing? I think the depositions are the strongest argument there. I'm running out of time. Would you like me to address the liberty interest? The stigma plus. Doesn't the property interest here and what happened and the fact that he had a right to have just cause before, doesn't that satisfy the plus test? I think the Second Circuit in the Greenwood case has decided that, that the property interest is sufficient as the plus for the stigma plus. What would be your response to that? Well, I don't think that's, I don't, I'm not familiar with the Greenwood case, Your Honor. But I'm looking at the Third Circuit cases. The stigma plus case or stigma plus cases in the Third Circuit indicate that a suspension with pay does not rise to a liberty interest sufficient to overcome that stigma plus hurdle. What's the case you're relying on? The Edwards case? The Edwards case, Your Honor, which was the 10-year professor who was suspended with pay for more than a month. The court found that there was not a liberty interest there. The Jerry Stone case, which was the 2006 unreported opinion, again, it was a teacher. Jerry Stone doesn't, Edwards is your best side. Jerry Stone is a presidential opinion. But there was here, there was a newspaper article that's really the stigma. And then you have a plus. I don't think there was that kind of stigma in Edwards, was there? Yes, Your Honor. But in order to get, before you can even get to a stigma plus claim, you have to have that liberty interest. You have to have that liberty interest. And there's no, there's no liberty interest here. The Third Circuit, I think, I think this court is fairly clear that reputation alone, the defamation, there's not a defamation claim under Section 1983. That's why we keep saying, and Ms. Pollack keeps saying stigma plus. Right. There's no plus here. Why isn't the loss of the job temporarily without a hearing? Why isn't that a plus? Because the case law is such that it's a suspension with pay. He didn't lose his job. He didn't lose any pay. He did not lose any benefits. He didn't lose any pension contributions. Well, in Edwards he lost absolutely nothing, isn't that correct? Yes. Okay, but they said in Edwards, this court has held stigma to reputation alone absent some accompanying deprivation of present or future employment. Well, now here he was told to go home. He was told he couldn't come to work every day. I mean, he was given pay, but deprivation of present employment, isn't suspension some deprivation that would satisfy the plus factor here? I don't believe it is. And I think that Edwards was suspended for the remainder of the semester in that case. And again, he was told. But Edwards remained employed with pay at all times relevant to the case. Yes, so did Dee. Dee was told he could not work. He was paid for not working for eight days while they immediately, over the holiday weekend, over Fourth of July weekend, got a hearing in place to determine the outcome. But I would imagine you folks would know this better than me, and I'm not chasing the record. But he said immediately over the holiday weekend. My guess is in a concept like this you can get a hearing together unless someone's on vacation a lot faster than six days. Well, Your Honor, part of the problem was, like I said, the holiday weekend. And then the other issue is I respectfully disagree with getting the members of council together for a meeting in less than a week. How big is council? There are eight members of council, I believe. And, you know, I speak from personal experience working with them that getting them together for anything is. Well, but one of them had it right in the newspaper and said, wait a minute, we need to research this. He's been grandfathered. One of the council members knew right up front there was a problem. Well, he didn't. That was not. What was said in the 30, it appeared in the paper on the 30th. Yes, I agree. I'm not disputing what the newspaper article said. Notably, he was not named as a defendant in this case. And notably, he, you know, all the other council members have testified that. The council members that did testify testified that they were not aware of it at the time they met. And there were likewise. And I'm not speaking outside the record, but there were council members who said, you know, he should be suspended without pay. And the council said, relying upon Labor Law Council's opinion, no, the best way to go here is suspension with pay. And immediately schedule a hearing at our earliest meeting. Where is Dunmore? Dunmore is right next to Scranton. Okay. I want to say how to Dunmore. Dunmore is tough. You're telling me. Just out of curiosity, what's the population of Dunmore? About? I don't know. It's significantly smaller than Scranton. It's a borough. It's not a city. Scranton, I think, is currently at about 80,000. I don't want to hazard a guess. Okay. Thank you. There was someone in here yesterday, I think, Mahalchik. George Mahalchik. He's my father, Your Honor. Okay. He told me to check to see if the lights were fixed. Tell him the one's still out. I'm going to use that in some of the public advocacy courses. It was a wonderful argument that he made. Not sure it would win, but it was a good argument. Thank you. Okay. Dunmore let Assistant Fire Chief D work for 18 years without having the necessary trainings, allegedly. He should have had that the first day. Well, he certainly did have above and beyond all the training requirements that were necessary and certification. So if it was wrong, if he was deficient, why did the borough let him do that for 18 years and then actually give him three promotions within that time period? I'm assuming she'd say because they didn't know. They didn't realize it. Yes, he did have. They did realize it because when they should have done what they did the day that they suspended him, when they talked with him, they confirmed that, yes, indeed, he had everything that he needed. And they agreed on a 30B6 deposition that they suspended him without just cause, which is in violation of their promise under the collective bargaining agreement, which provides the property interest for us to go forward on a due process and a stigma plus claim. How do you distinguish the Edwards case? Doesn't this follow form that there be no liberty interest under Edwards? No. For the reason because of the fact that Edwards, he did get his jury trial. So differently on a different claim. Yeah, but there's a summary judgment on the due process there in Edwards. Correct. It was two paragraphs. And they never talk about the CBA, the collective bargaining agreement. To me, as the stand of court always did, you always have to go back to the agreements between the parties to determine whether there's a property interest. To be clear, Judge Alito says, you know, a suspension with pay is not enough to create a deprivation of a liberty interest. That's the most basic qualification, right? Well, the Supreme Court tells us that if you ever damage someone's good name, their integrity, their honesty, they get due process before you can take that away from them. Definitely, without doubt. The question was, I think, how do you distinguish Edwards? And I distinguish, number one, it was only a two-paragraph analysis. I distinguish it because of collective bargaining and agree with your quote from the case. And I think that here, the interest, it's clearly in a collective bargaining agreement, and it should give him his day in court. That's all he wants. But there is a just cause provision in that case, too. Well, I don't know if they talked about a collective bargaining agreement. Obviously, teachers have tenure and all that, so I think that was at issue here. There's a collective bargaining agreement. And, again, the Stana case specifically says you look at what the agreement is, and it's only fair that you look at what the agreement between the parties are. It's not fair to suspend D without just cause when you told him you wouldn't do that. And so to me, and they admit in the depositions that they did not have cause to suspend him. That should be sufficient for us to get to a jury trial. Do you have any questions? No, hold on one second. We have a mediation program. Yeah, I don't have an objection to that. Okay. Congressman, can you come up for a second? Pardon? Can you come up for a second? Both of us are on? Yes. Okay. Let's stop this wording. Has business been to mediation? No. Okay. No. Could I add just one last tidbit? Is it a question or? It's just I forgot one part. Why don't you do a 28-J letter? Pardon? Why don't you do a 28-J letter? Okay. Thank you, Your Honor.